AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

An I-Phone Model A1533 seized from DANNY GOMES AUSTIN on June 8, 2018

Case No. 18-mj-1170-DLC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

An I-Phone Model A1533 seized from DANNY GOMES AUSTIN on June 8, 2018 as decribed in Attachment A

located in the _____ District of _____Massachusetts_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Affidavit of ATF Special Agent Shervin Dhanani and Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §922(a)(1)(A) | Dealing firearms without a license |
| 18 U.S.C. 922(g)(1) | Felon-in-possession of a firearm |
| 18 U.S.C. § 922(a)(1)(B) | Dealing ammunition without a license |

The application is based on these facts:
See attached affidavit of ATF Special Agent Shervin Dhanani

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ATF Special Agent Shervin Dhanani
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/24/2018

*Judge's signature*

City and state: Boston, Massachusetts

Hon. Donald L. Cabell, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Description of the Device to be Searched

The Target Device is an I-Phone model A1533 cellular telephone with IMEI number 358357061083178 and serial number DX3QFYH9FNJJ that was seized from DANNY GOMES AUSTIN on June 8, 2018. The device is associated with telephone number (857) 385-6505 and is currently being held as evidence by the ATF at 10 Causeway Street, Boston, Massachusetts. Based on the information described in the accompanying affidavit, this device is believed to belong to DANNY GOMES AUSTIN and used by him to facilitate violations of the federal firearms laws.

## ATTACHMENT B

1. All records on the Target Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) (Felon in possession of a firearm), 18 U.S.C. § 922(a)(1)(A) (Dealing firearms without a license) and 18 U.S.C. § 922(a)(1)(B) (Dealing ammunition without a license), including:

    a. Records or other information related to the acquisition, transportation, storage, possession, or sale of firearms or ammunition;

    b. Records or other information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    c. any information recording the schedule of travel of DANNY GOMES AUSTIN; and,

    d. GPS historical data.

2. Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol addresses to communicate over the Internet, including:

    a. Records of Internet Protocol addresses used; and,

    b. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" shall include any form of computer or electronic storage (such as flash memory or other media that can store data and any photographic form). including email, text messaging, instant messaging, or other communications, and including any content that may be synchronized to or on the device from any service or

application utilized by the subject all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

### AFFIDAVIT OF ATF SPECIAL AGENT SHERVIN DHANANI

I, Special Agent Shervin Dhanani, depose and state as follows:

### PURPOSE OF THE AFFIDAVIT

1.   I submit this affidavit in support of an application for the issuance of a warrant to search an I-Phone model A1533 cellular telephone with IMEI number 358357061083178 and serial number DX3QFYH9FNJJ described in Attachment A and hereinafter referred to as the "Target Device." As described below, there is probable cause to believe that the Target Device contains evidence, fruits, and instrumentalities related to the violation of federal firearms laws, specifically 18 U.S.C. § 922(g)(1) (Felon in possession of a firearm), 18 U.S.C. § 922(a)(1)(A) (Dealing firearms without a license) and 18 U.S.C. § 922(a)(1)(B) (Dealing ammunition without a license). The Target Device is currently being stored by ATF investigators at 10 Causeway Street, Boston as described in Attachment A. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession on June 8, 2018.

### INTRODUCTION

2.   I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") where I have been employed since August, 2015. Prior to joining ATF, I was employed as a Special Agent with the Diplomatic Security Service ("DSS") for approximately six years. I am currently assigned to the ATF's Boston Group II Field Office where my duties include, among other things, conducting investigations related to firearms trafficking, firearm possession by prohibited persons, the use of firearms in drug trafficking

1

crimes, and the investigation of violations of laws related to explosives violations and incendiary (arson) fires. I am a graduate of the ATF National Academy and of the Federal Law Enforcement Training Center.

3. During the course of my law enforcement career, I have written and/or participated in the execution of numerous state and federal search warrants for violations of firearms and narcotics laws. Based on my training and experience, I have found that individuals who illegally possess or deal firearms and ammunition commonly use cellular telephones to communicate about and further their gun trafficking activities. I have also found that these individuals commonly take photographs of these items with cellular phones or other electronic devices with a camera. These photographs are utilized for a multitude of purposes which include, but are not limited to: sharing the photographs with potential buyers of firearms in order to solicit their interest in purchasing these items; posting the photographs on social media sites to brag about the possession of these items to friends and other associates; and sharing of the photographs with rival gang members or enemies for intimidation purposes. I have also learned, through my training and experience, that individuals who maintain photographs of firearms as indicated above often do not delete them for some time, even after the firearms are sold or otherwise disposed.

4. I have also found, based on my training and experience, that individuals who illegally possess or deal firearms and ammunition often use their cellular phones in order to communicate with suppliers, potential buyers, or other individuals potentially involved in unlawful business transactions and will maintain information about these individuals at various places on their phones (such as their contacts lists and in saved text messages and emails. These communications often occur in a variety of ways, which include, but are not limited to:

2

text messaging (often used in lieu of phone calls to avoid speaking over the telephone), emails, "SnapChat" messaging and Facebook messaging. Contents of these communications often reveal the storage location of firearms and ammunition, help identify accomplices, and also reveal plans for future transactions.

5. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

    a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one;

    b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file;

    c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task; and,

    d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

6. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been

convicted of a crime punishable by imprisonment of a term exceeding one year to possess a firearm or ammunition in or affecting interstate commerce.

7. Also, based on my training and experience, I know that it is a violation of Title 18, United States Code, Section 922(a)(1)(A) for any person who is not licensed to deal, import or manufacture firearms to willfully engage in the business of dealing, importing or manufacturing firearms.

8. Finally, based on my training and experience, I know that it is a violation of Title 18, United States Code, Section 922(a)(1)(B) for any person who is not licensed to deal, import or manufacture ammunition to willfully engage in the business of dealing, importing or manufacturing ammunition.

9. The statements contained in this affidavit are based on my participation in this investigation, conversations with other ATF agents involved in the investigation, and on information provided to me by officers of the Boston Police Department ("BPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe that the Target Device contains evidence relating to the violation of federal firearms statutes. It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of the investigation.

## THE TARGET DEVICE

10. The Target Device is an I-Phone model A1533 cellular telephone with IMEI number 358357061083178 and serial number DX3QFYH9FNJJ. The device is currently associated with telephone number (857)385-6505 and is in the custody of ATF at 10 Causeway Street in Boston. Based on the information described below, this device is believed to belong to DANNY GOMES AUSTIN who used it during the underlying investigation to set up gun

purchases via phone calls, text messages, and by sending pictures of firearms that he wished to sell to a customer who was in fact an ATF cooperating witness.

## CONTROLLED PURCHASES OF FIREARMS

11. In April 2017, an ATF Cooperating Witness ("CW-1") provided specific information to investigators about an individual named of DANNY GOMES AUSTIN who uses an alias of "Dizzy."[1] According to CW-1, GOMES AUSTIN was able to acquire firearms and indicated his willingness to sell them to CW-1. Investigators confirmed that DANNY GOMES AUSTIN has a valid Massachusetts identification card and a date of birth in 1986. Queries of the Boston Police Department Gang Assessment Database revealed that GOMES AUSTIN is currently identified as an active member of the Draper Street Gang located in Dorchester, Massachusetts. Upon reviewing GOMES AUSTIN's criminal history (maintained by the Massachusetts Criminal History Systems Board), investigators and I learned that GOMES AUSTIN has 45 adult arraignments in Massachusetts and multiple felony convictions. Specifically, I learned that GOMES AUSTIN was convicted on June 19, 2007 of Assault And Battery with a Dangerous Weapon and Armed Assault with Intent to Murder in Suffolk Superior Court. Records indicate that he was sentenced to 2-3 years months on those offenses. I also learned that GOMES AUSTIN was convicted on April 20, 2011 of three counts of possession of a firearm in Suffolk Superior Court. Records indicate that he was sentenced to 2 years for that offense.

---

[1] Since the start of our relationship, I have found the CW-1 to be truthful and reliable and have found his/her information to be accurate. CW-1 has multiple arrests and criminal convictions for forgery, uttering counterfeit notes, motor vehicle violations, disorderly conduct, impersonation, and telecommunications fraud. ATF pays CW-1 for his/her services and has video-recorded all of the firearm purchases CW-1 has made from GOMES-AUSTIN.

5

12. GOMES AUSTIN's criminal history also revealed that he is currently under indictment in Suffolk Superior Court for Armed Home Invasion, two counts of Armed Robbery (Firearm), Assault and Battery with a Dangerous Weapon, Possession of a Machine Gun and Possession of a Loaded Sawed-Off Shotgun. These pending charges originated in Dorchester District Court on December 10, 2014.

13. Following our determination that GOMES AUSTIN was federally prohibited from possessing firearms and ammunition, myself and other investigators directed CW-1 to continue communications with GOMES AUSTIN in an effort to arrange for the controlled purchase of a firearm and ammunition. Between June of 2017 and May of 2018, CW-1 successfully made controlled purchases of four loaded firearms from GOMES AUSTIN (who delivered three of the four guns and ammunition) and one of GOMES AUSTIN's associates (who delivered the fourth gun and ammunition at GOMES AUSTIN's direction). These purchases were each arranged by CW-1 telephoning or text messaging GOMES AUSTIN at telephone number (857)385-6505, the number associated with the Target Device. The most recent of these purchases is described below.

### THE MAY 30, 2018 SALE OF A FIREARM AND AMMUNITION BY GOMES AUSTIN TO CW-1

14. On May 25, 2018, CW-1 informed investigators that DANNY GOMES AUSTIN had re-established telephone contact with him/her from telephone number (857)385-6505 (the number associated with DANNY GOMES AUSTIN). CW-1 indicated that GOMES AUSTIN had a source of firearms who wanted to sell five semi-automatic pistols to CW-1 for $2400 in United States currency. Subsequent telephone calls and text messages between CW-1 and GOMES AUSTIN were captured and logged into ATF evidence.

15. On May 29, 2018, CW-1 arranged for the purchase of one of the five firearms from GOMES AUSTIN for $750 in United States currency. GOMES AUSTIN informed CW-1 that he would obtain the firearm from his source later that day.

16. On May 30, 2018, GOMES AUSTIN informed CW-1 through text messages and telephone calls from telephone number (857)385-6505 that he had obtained a Beretta pistol to sell to CW-1. GOMES AUSTIN had also sent a picture of that firearm to the CW by text message from telephone number (857) 385-6505. GOMES AUSTIN and CW-1 then arranged for the transaction to take place later that day.

17. On that same date, at a prearranged location, myself and other investigators met with CW-1 in anticipation of purchasing a firearm from DANNY GOMES AUSTIN. Prior to CW-1 departing the staging area, we provided him/her with an undercover government vehicle (that was searched for contraband with negative results). We also searched CW-1's person, finding no contraband. We then equipped CW-1 with a transmitting device and two audio/video recording devices. We also provided CW-1 with government money to be used to purchase the Beretta.

18. On that same date at approximately 2:40 pm, the CW departed the staging area in the ATF undercover vehicle and was followed by ATF and Boston Police surveillance units. CW-1 parked the vehicle in a parking lot in the vicinity of 267 Bowdoin Street in Dorchester, and established contact with GOMES AUSTIN via telephone number (857)385-6505.

19. At approximately 2:57 pm, GOMES AUSTIN entered the ATF undercover vehicle and handed CW-1 a blue Boston Children's Hospital bag containing a loaded firearm. CW-1 then counted $750 of government money in front of GOMES AUSTIN and handed him the full amount. The CW-1 then asked GOMES AUSTIN about the remaining firearms for sale

and GOMES AUSTIN replied, "I gotta go grab them." The CW and GOMES AUSTIN agreed to speak later in the day and GOMES AUSTIN exited the vehicle.

20. Following the transaction, CW-1 followed ATF Special Agent Keltar Mui and I back to the staging area. Note that before and after the transaction, ATF and Boston Police surveillance units observed GOMES AUSTIN on foot in the area of the buy.

21. At approximately 3:04 pm, CW-1 returned to the staging area. At this time, Special Agent Mui and I turned off and collected all electronic recording/transmitting equipment. Special Agent Mui also took the blue bag that GOMES AUSTIN gave CW-1 containing the loaded Beretta and also took the electronic evidence into his possession. Special Agent Mui also searched the ATF undercover vehicle and CW-1's person for contraband with negative results. Finally, we debriefed CW-1 to confirm all the details regarding the videotaped transaction.

22. On that same date, Special Agent Mui and I examined the firearm and determined it to be a Beretta Model 9000s, 9mm semi-automatic pistol bearing serial #SZ011004. We also removed the magazine from the pistol and determined that it contained seven rounds of 9mm ammunition.

## INTERSTATE NEXUS DETERMINATION

23. On June 7, 2018, Special Agent Mattheu Kelsch, a certified ATF firearm interstate nexus expert, researched the firearm and ammunition sold by DANNY GOMES AUSTIN to CW-1 on May 30, 2018. During the examination, Special Agent Kelsch examined the firearm markings which include, but are not limited to, the serial number, name of the manufacturer, model, caliber or gauge, and also, when applicable, the importer.

24. Special Agent Kelsch concluded that the Beretta pistol purchased by CW-1 from GOMES AUSTIN on May 30, 2018 is a "firearm" as defined in Title 18, United States Code Section 921(a)(3), and was not manufactured in the Commonwealth of Massachusetts, meaning that firearm had traveled across a state line and/or an international boundary prior to being purchased from GOMES AUSTIN in Dorchester on May 30, 2018.

25. Special Agent Kelsch also concluded that each of the 7 rounds of ammunition purchased by CW-1 from GOMES AUSTIN on May 30, 2018 is "ammunition" as defined in Title 18, United States Code, Section 921(a)(17)(A), and was not manufactured in the Commonwealth of Massachusetts, meaning that all 7 rounds of ammunition had traveled across a state line or an international boundary prior to being purchased from GOMES AUSTIN in Dorchester on May 30, 2018.

**EXECUTION OF FEDERAL ARREST WARRANT ON DANNY GOMES AUSTIN**

26. On June 6, 2018, CW-1 informed Special Agent Keltar Mui that he/she had been in contact with DANNY GOMES AUSTIN through text messages at telephone number (857)385-6505. During the text message exchange, CW-1 inquired about the "5 toys" (believed to be firearms) and GOMES AUSTIN stated that he would be able to obtain them and meet with CW-1 on June 8, 2018. Special Agent Mui instructed CW-1 to arrange for the transaction to occur on the aforementioned date.

27. On June 8, 2018, I obtained a federal arrest warrant for DANNY GOMES AUSTIN, charging him with violations of Title 18 United State Code Section 922 (g)(1) in the District of Massachusetts. The federal arrest warrant was numbered 18-MJ-1092-DLC, and was issued by the Honorable Donald L. Cabell.

28. On that same date, we placed DANNY GOMES AUSTIN under arrest at 98 Draper Street, Dorchester, Massachusetts. In GOMES AUSTIN's possession was one IPhone cellular telephone later determined to be the "Target Device." I subsequently dialed telephone number (857)385-6505 and the IPhone in GOMES AUSTIN's possession rang. The telephone was subsequently turned off and has been retained by ATF since that time.

29. On that same date, the Target Device was transported to the ATF Boston II evidence vault and was determined to be an I-Phone model A1533 cellular telephone with IMEI number 358357061083178 and serial number DX3QFYH9FNJJ. The Target Device was logged into evidence at ATF as item number 16.

## CONCLUSION

30. I conclude, based on these facts, that DANNY GOMES AUSTIN was actively trafficking firearms and ammunition in violation of federal firearms laws, specifically 18 U.S.C. § 922(g)(1) (Felon in possession of a firearm), 18 U.S.C. § 922(a)(1)(A) (Dealing firearms without a license) and 18 U.S.C. § 922(a)(1)(B) (Dealing ammunition without a license) using the Target Device. I further conclude that there is probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the Target Device described in Attachment A.

I declare that the foregoing is true and correct to the best of my knowledge and belief.

SHERVIN DHANANI
SPECIAL AGENT, ATF

Subscribed and sworn to before me
this ___ day of July, 2018

HON. DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Description of the Device to be Searched

The Target Device is an I-Phone model A1533 cellular telephone with IMEI number 358357061083178 and serial number DX3QFYH9FNJJ that was seized from DANNY GOMES AUSTIN on June 8, 2018. The device is associated with telephone number (857) 385-6505 and is currently being held as evidence by the ATF at 10 Causeway Street, Boston, Massachusetts. Based on the information described in the accompanying affidavit, this device is believed to belong to DANNY GOMES AUSTIN and used by him to facilitate violations of the federal firearms laws.

## ATTACHMENT B

1. All records on the Target Device described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) (Felon in possession of a firearm), 18 U.S.C. § 922(a)(1)(A) (Dealing firearms without a license) and 18 U.S.C. § 922(a)(1)(B) (Dealing ammunition without a license), including:

   a. Records or other information related to the acquisition, transportation, storage, possession, or sale of firearms or ammunition;

   b. Records or other information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

   c. any information recording the schedule of travel of DANNY GOMES AUSTIN; and,

   d. GPS historical data.

2. Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol addresses to communicate over the Internet, including:

   a. Records of Internet Protocol addresses used; and,

   b. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" shall include any form of computer or electronic storage (such as flash memory or other media that can store data and any photographic form). including email, text messaging, instant messaging, or other communications, and including any content that may be synchronized to or on the device from any service or

application utilized by the subject all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.